IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| CORDELE DEVELOPMENT CORPORATION | § § § | |
| VS. | § § | CIVIL NO. 5:11-CV-00005 |
| EDISON MISSION ENERGY, CEDRO HILL WIND, LLC, AND WANZEK CONSTRUCTION, INC | § § § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES CORDELE DEVELOPMENT CORPORATION (hereinafter called "Plaintiff" or "Cordele"), Plaintiff in the above-entitled and numbered cause, complaining of CEDRO HILL LLC, EDISON MISSION ENERGY, and WANZEK CONSTRUCTION, INC. (hereinafter collectively called "Defendants" or by their individual names, i.e., "Cedro Hill," "Edison," and "Wanzek," respectively) and does make and file this its First Amended Complaint, and for causes of action, would respectfully show unto the Court the following:

I.

## PARTIES

1.      Cedro Hill Wind, LLC ("Cedro Hill") is a foreign corporation organized under the laws of the State of Delaware and purports to have its principal place of business at 18101 Von Karman Ave., Suite 1700, Irvine, California 92612-0178.  It is therefore a citizen of California for the purposes of diversity.  However, Cedro Hill conducts business within the State of Texas.  This Defendant has already been served and has answered.

2.      Edison Mission Energy ("Edison" or "Edison Mission Energy") is a foreign corporation organized under the laws of the State of Delaware with its principal place of business at 18101 Von Karman Ave., Suite 1700, Irvine, California 92612-0178.  It is therefore a citizen of California for the purposes of diversity.  However, Edison Mission Energy conducts business within the State of Texas.  This Defendant has already been served and has answered.

3.      Wanzek Construction, Inc. ("Wanzek") is a foreign corporation organized under the laws of the State of North Dakota with its principal place of business at 16553 37R Street SE, Fargo, North Dakota 58103.  It is therefore a citizen of North Dakota for the purposes of diversity.  However, Wanzek conducts business within the State of Texas.  Wanzek may be served with summons and citation by serving its registered agent, Elias Estrada, at 16553 37 R Street, Fargo, North Dakota 57501.  **Issuance of Summons is requested at this time**.

## II.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction of this case pursuant to 28 U.S.C. section 1332(a)(1) because there is a complete diversity of citizenship between the Plaintiff and Defendants, and the amount in controversy exceeds $75,000.00, excluding interest and costs.  Defendants are citizens of California and North Dakota, and Plaintiff is a citizen of Texas.

5.      Venue is proper in this district under 28 U.S.C. section 1391(a)(2) because a substantial part of the property at issue is situated in this district.  The real and personal

property at issue in this lawsuit is located in Webb County, Texas, which is within the territorial limits of this Court.

### III.

### FACTS

6.      Plaintiff is the lessee of the mineral interests to a tract of land in Webb County, Texas, as well as the possessor of rights-of-way and easements on adjacent tracts of land through which a gas pipeline owned and/or utilized by Plaintiff runs.

7.      The real property at issue is what is known in the oil and gas industry as "Relinquishment Act" property.  That is, the State of Texas owns the mineral interest rights to the real property, and royalties from oil and gas production are divided between the State and the surface owner.  However, the surface owner has the continuing duty to encourage and facilitate oil and gas operations.

8.      In 1959, one of Plaintiff's predecessors-in-mineral-interests to the property at issue acquired by lease the mineral rights to explore and produce oil and gas from the subject property.  In 1973, Plaintiff's predecessor-in-interest, Thomas S. West, Jr. acquired by lease those mineral exploration and production rights.  Defendants and their affiliates have both actual and constructive notice and knowledge of Plaintiff's previously-existing mineral interest rights.

9.      In July 2009, a land surveyor contacted Plaintiff to inform that there was a "proposed" wind project on land in Webb County, Texas adjoining the land on which Plaintiff had an existing mineral interest.  In planning for the "proposed" wind project, the wind farm owners/operators required a crossing agreement for an electrical line to cross Plaintiff's existing gas pipeline that laid on land upon which Plaintiff had enjoyed a right-

of-way and easement for many years.  The proposed wind project was organized as Cedro Hill Wind, LLC ("Cedro Hill").

10.      The land surveyor instructed Plaintiff to contact the owner/operator of the project, an energy developer named DKRW Energy, if Plaintiff had further questions. As Plaintiff later learned, in mid-July 2009, the owner of the surface interest of the subject and adjacent property, Glory Ranch, LP, granted to Cedro Hill a 40-year easement in gross on, over, under and across the property "subject to any and all existing and recorded pipeline, road or utility easements and oil, gas or mineral leases covering the Property or any part thereof."

11.      In August 2009, Plaintiff communicated with a representative of DKRW Energy in Houston, Texas regarding the "proposed" Cedro Hill project.  The DKRW Energy representative requested that Plaintiff send DKRW Energy a letter indicating the terms Plaintiff would seek in a crossing agreement for the "proposed" wind project since the consent of Plaintiff would be necessary for any portion of the Cedro Hill project to cross Plaintiff's existing pipelines.  During the communication with the DKRW Energy representative, Plaintiff was also informed of plans for "proposed" towers and other structures in connection with the "proposed" Cedro Hill wind project on the land in which Plaintiff had/has an indisputable and dominant mineral interest.

12.      In the ensuing months of September and October 2009, what was represented to Plaintiff as the "proposed" Cedro Hill project on Plaintiff's mineral interest land in Webb County, Texas was sold by DKRW Energy to Defendant, Edison Mission Energy.  As of this time, no pipeline crossing agreement had been reached, not due to

any fault of Plaintiff, and Plaintiff had not consented to the crossing of its pipeline(s) or the building of any structure(s) upon the pipeline(s).

13.     As of October 2009, Edison Mission Energy was the parent company and owner/operator of the "proposed" wind project known as Cedro Hill.  Edison did not perform any or, alternatively, did not perform sufficient, due diligence or additional title search of recorded public records to confirm it had the requisite consent from all necessary property interest owners to begin construction operations upon the property designated for the proposed wind farm project.  In fact, it did not have such requisite consent from Plaintiff, whose superior legal interests in the property were and are well-documented in publicly-recorded documents that were available to Defendants, Edison and Cedro Hill.

14.     In late October 2009, the individual who had been Plaintiff's long-time onsite pumper became ill, and he subsequently passed away of natural causes the following month.   During this time period, Plaintiff received no contact or communications from Edison or Cedro Hill regarding the "proposed" activities on Plaintiff's mineral interest land.

15.     In or around late October/early November 2009, unknown to Plaintiff, construction began on what had been represented to Plaintiff was only a "proposed" wind project.  The land over which Plaintiff had/has previously-existing mineral interests was leveled, existing roads were covered and re-established in different locations, existing gates and fences were torn down and replaced at different locations, Plaintiff's pipeline was repeatedly run over by heavy equipment causing scale and debris to clog the pipeline.  This all occurred despite the fact that the owner/operator of the Cedro Hill

project, Edison, had neither initiated nor followed up on any efforts to obtain a pipeline crossing agreement or even contact Plaintiff.

16.     In early November 2009, Plaintiff began having problems with its gas pipeline on the land in which the owners/operators of the Cedro Hill project had previously requested a crossing agreement.   Plaintiff learned from the pipeline company/gas purchaser that their pipeline meter on the mineral interest property had been shut off as of November 10, 2009 which caused well equipment to load up with fluids, consequently causing malfunctions to a compressor and related equipment and causing the pipeline to clog.   Later in December 2009, a pipeline company representative informed Plaintiff that there was heavy construction occurring at a location near the pipeline meter tap and that the pipeline company had not shut off the meter.  The representative turned the meter back on, and the well started flowing at the wellhead, but it did not show production at the meter, indicating a blockage or leak in the pipeline.

17.     On or about December 22, 2009, Plaintiff received communication from an electrical contractor in Webb County asking Plaintiff whether the contractor needed to hand-dig an electrical right-of-way to cross the land in which Plaintiff had/has an existing mineral interest.  Plaintiff learned for the first time that full-blown, heavy construction on the "proposed" Cedro Hill wind farm was already well underway, despite the failure of Edison and Cedro Hill to obtain Plaintiff's agreement or consent to cross its pipeline or invade on Plaintiff's use and enjoyment of its superior rights to the property and that Defendants had caused damage to Plaintiff's lease, well and pipeline facilities.

18.     Plaintiff later learned that a construction company, Wanzek Construction, Inc. ("Wanzek"), was retained by Edison to perform construction services on the Cedro Hill project.   According to a recent pleading by Edison, it concedes that it retained Wanzek in October 2009 to work on the Cedro Hill project.  Edison further asserts that Wanzek is "responsible for all or a proportionate part of the claims raised in Plaintiff's Petition," as Wanzek was retained to provide to Edison "construction-related services in conjunction with the Cedro Hill Project."

19.     In early January 2010, Plaintiff retained the services of an oil and gas engineer to evaluate and assess damage to its pipeline and well.   Plaintiff's representatives drove to the mineral interest land in Webb County, Texas and were amazed at the amount of construction underway.   Piles of caliche, rock, heavy equipment, vehicles, trailers and a cement batch plant were within feet of Plaintiff's existing pipeline.   Plaintiff's pipeline signs had been severely damaged by heavy construction vehicles and construction crews had placed caliche and rock pads in order to drive heavy equipment and trucks repeatedly over Plaintiff's pipeline, causing it damage.

20.     During Plaintiff's visit to its mineral interest land, the site of Edison's Cedro Hill wind project, Plaintiff's representatives spoke with the site manager and informed him of Plaintiff's productive well in the area.   The site manager instructed Plaintiff's representatives to contact another Edison manager, his immediate superior, to discuss Plaintiff's concerns.

21.     On or about January 8, 2010, a representative for Plaintiff spoke with the Edison senior manager about the Cedro Hill wind project.  The senior manager informed

Plaintiff that he needed a "pipeline crossing agreement," though Edison, its wind project, Cedro Hill, and, according to Edison, Wanzek, had already damaged Plaintiff's property.

22.    On or about January 12, 2010, a manager for Edison working on the Cedro Hill wind project contacted Plaintiff and requested information regarding existing pipelines on Plaintiff's mineral interest property and adjoining tracts.   On or about January 13, 2010, Plaintiff's representatives again drove the 300+ mile round trip to Plaintiff's mineral interest property in Webb County, Texas to speak with the Edison manager.   When Plaintiff's representatives tried to enter Plaintiff's mineral interest property through the Cedro Hill gate entrance, Plaintiff's pumper's gate off of CR 2050 having been moved or torn down, they were denied admittance and told "[they] could use [their] own gate" or words to that effect.  When Plaintiff's representatives were finally able to gain admittance to Plaintiff's mineral interest property, they met with the two Edison managers working on the Cedro Hill wind project and were informed by the senior manager that Plaintiff would be paid for all Plaintiff's damages and repairs to the damaged pipeline and/or well.  With that representation, Plaintiff agreed to enter into a mutually-agreed and negotiated pipeline crossing agreement to be negotiated between the parties.  Follow-up correspondence from the manager confirmed his commitment to "keep [Plaintiff] whole" for the Cedro Hill work that affected Plaintiff's existing property.

23.    On or about January 20, 2010, an attorney contacted Plaintiff on behalf of Edison and informed Plaintiff that she wanted to facilitate a crossing agreement with Edison.  She indicated Edison was in a hurry to reach an agreement.  Plaintiff indicated it did not want to obstruct progress on Edison's Cedro Hill project, but certain terms

needed to be included in the crossing agreement to facilitate Plaintiff's current and future operations on the property.

24.     In the weeks following January 26, 2010, Plaintiff provided Edison and Cedro Hill with an abundance of information and documents evidencing its previously-existing operations and dominant property rights.    Plaintiff also provided terms it required in the proposed crossing agreement, and continually indicated that it was not Plaintiff's intent or desire to obstruct the wind farm's progress.   A manager for Edison and Cedro Hill informed Plaintiff that he believed Cedro Hill's predecessor owner had gotten in place all agreements with all property interest owners to facilitate the wind farm construction and operations.   He stated that it was for this reason Edison did not take steps to confirm all such arrangements had been made.

25.     At the urging of managers and attorneys for Edison and Cedro Hill, Plaintiff retained counsel to assist in negotiating a pipeline crossing agreement with the agreement by Edison and Cedro Hill that they (Edison and Cedro Hill) would pay for the retention of such counsel.   Unfortunately, even after the Plaintiff's retention of counsel, each crossing agreement draft in which Plaintiff would propose terms at the behest of Edison and Cedro Hill representatives, the drafting attorneys (for Edison and Cedro Hill) would continually omit Plaintiff's proposed substantive terms.   For this reason alone, an agreement was not reached on the terms of a pipeline crossing agreement.

26.     On or about February 8, 2010, Plaintiff received plat information from a land surveyor indicating that a wind tower pad that had been placed by Edison and Cedro Hill was too close to a well that had previously been proposed for drilling by Plaintiff, which will require Plaintiff to incur the additional effort and expense of

directionally drilling the well.   Plaintiff also learned that Plaintiff's future proposed geophysical seismic operations, future drilling operations, flow and distribution and gathering systems operations would be impaired by the wind farm's towers and underground electric transmission lines due to Defendants' reckless failure to perform a thorough title search or other due diligence.   Consequently, Plaintiff will incur additional expenses and lost profits proximately caused by Defendants' recklessness.

27.     As a direct result of Defendants' tortious, malicious and reckless conduct, Plaintiff has been unable to comply with certain existing business obligations, it has incurred direct costs and expenses to repair its damaged property, it has sustained a loss of income and profits, and it has been required to retain the services of counsel to enforce the agreement entered between Plaintiff and Edison Mission Energy and Cedro Hill, as well as to recovery for damages proximately caused by Defendants' acts or omissions.

28.     On or about March 16, 2010, Plaintiff received a communication from counsel for Edison and Cedro Hill requesting a conference call to occur on March 18, 2010.   Believing the gesture of Edison and Cedro Hill to be one of good faith, Plaintiff agreed to attend the conference call and did, in fact, attend.   During the conference, Plaintiff agreed to reduce the amount of its request for reimbursement pursuant to the agreement with Edison and Cedro Hill in exchange for a mutually-acceptable pipeline crossing agreement.   The conference was unsuccessful in securing an agreement.

29.     On or about March 19, 2010, Plaintiff was served as a defendant with a lawsuit in federal court by Cedro Hill, the lawsuit having been filed two days *prior to* the

telephone conference, on March 16, 2010, Edison Mission Energy and Cedro Hill again demonstrating their dirty hands, bad faith and unfair dealing.

30.     Realizing that Plaintiff would not be coerced or persuaded by it bullying tactics and knowing that its lawsuit had been filed without any reasonable or good faith basis in law or fact, Cedro Hill dismissed its malicious lawsuit just days before Plaintiff's deadline to answer.  Upon information and belief, Plaintiff further asserts that the federal lawsuit was maliciously filed to excuse contractual non-compliance related to the commencement of Cedro Hill wind farm operations.

**IV.**

**CAUSES OF ACTION**

**1.     Causes of Action against Cedro Hill**

     i.     Declaratory Judgment - 28 U.S.C. §§ 2201 and 2202

31.     Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

32.     There is an actual controversy between Plaintiff and Cedro Hill and its affiliates.  In accordance with 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57, Plaintiff requests that the Court enter judgment declaring that: (a) Plaintiff possesses dominant rights to Plaintiff's previously-existing mineral interest property at issue than any such property rights of Cedro Hill and its affiliates; (b) Cedro Hill and its affiliates have trespassed onto and damaged the dominant estate interest possessed by Plaintiff; (c) Cedro Hill's and its affiliates' operations on the subject land, if left unabated, will continue to cause damage to Plaintiff's well, lease and pipeline facilities; (d) Cedro Hill and its affiliates may not cause any further damages to Plaintiff's property, including its

well, lease and pipeline facilities; and (e) the agreement to make Plaintiff whole entered into between Plaintiff and the manager of the Cedro Hill project is both valid and enforceable.

33.    In accordance with 28 U.S.C. § 2202 and Fed. R. Civ. P. 57, Plaintiff further requests that the Court enter judgment granting them any such further necessary or proper relief as may be warranted.

ii.    <u>Declaratory Judgment – Tex. Civ. Prac. & Rem. Code §§ 37.001 *et seq.*</u>

34.    Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

35.    There is an actual controversy between Plaintiff and Cedro Hill and its affiliates.  In accordance with Texas Civil Practice & Remedies Code §§ 37.001 *et seq*, Plaintiff requests that the Court enter judgment declaring that: (a) Plaintiff possesses dominant rights to Plaintiff's previously-existing mineral interest property at issue than any such property rights of Cedro Hill and its affiliates; (b) Cedro Hill and its affiliates have trespassed onto and damaged the dominant estate interest possessed by Plaintiff; (c) that Cedro Hill's and its affiliates' operations on the subject land, if left unabated, will continue to cause damage to Plaintiff's lease, well and pipeline facilities; (d) Cedro Hill and its affiliates may not cause any further damages to Plaintiff's property, including its well, lease and pipeline facilities; and (e) the agreement to make Plaintiff whole entered into between Plaintiff and the manager of the Cedro Hill project is both valid and enforceable.

36.    In accordance with Texas Civil Practice & Remedies Code §§ 37.001 *et seq*, Plaintiff further requests that the Court enter judgment granting it reasonable

attorneys' fees and costs, as provided by statute, as well as any such further necessary or proper relief as may be warranted.

iii.   <u>Breach of Contract</u>

37.   Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

38.   Plaintiff entered into a valid, enforceable contract with Cedro Hill and its affiliates.  The manager who entered into the contract on behalf of Cedro Hill and its affiliates had actual and/or apparent authority to bind Defendant and its affiliates.  The contract provided that Defendants would make Plaintiff whole for any damages and/or expenses caused by Defendants' operations, and the Plaintiff would enter into a mutually-agreed and negotiated crossing agreement.

39.   Plaintiff is a party to, and intended beneficiary of, the contract.  Therefore, it is a proper party to sue for breach of contract.

40.   Plaintiff attempted to perform its obligations under the contract.  However, Defendants' continual tortious, malicious and bad-faith conduct as stated above has rendered Plaintiff unable to perform its obligations under the contract.  Therefore, Plaintiff is excused from performing its obligations under the contract.

41.   Cedro Hill and its affiliates have breached the contract.  They have refused to make Plaintiff whole for the damages caused it, instead attempting to coerce Plaintiff into concession by nothing short of bad-faith bullying tactics, including the malicious, groundless filing of a lawsuit.  Plaintiff has attempted in good faith to resolve this matter without the need for litigation, but Defendants refuse to comply with their agreement to make Plaintiff whole.

42.     The breach of contract by Cedro Hill and its affiliates has caused past and present damages, including lost profits, costs of repairs to damaged property, lost opportunities, increased expenses associated with operations and other unliquidated damages, and it is anticipated that the malicious and reckless conduct and operations of Cedro Hill and its affiliates, if left unabated, will cause future damages to Plaintiff, as well.

43.     Plaintiff is entitled to recover reasonable attorney fees under the Texas Civil Practice and Remedies Code Chapter 38 because this is a suit for breach of an oral contract that was performable within one year.  Plaintiff presented its claim for damages to Defendants through counsel prior to the initiation of this lawsuit.

iv.     <u>Tortious Interference with Existing Contract</u>

44.     Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

45.     At the time of the underlying events of this lawsuit, and to the present, Plaintiff was a party to existing contracts to provide gas and/or oil supplies to entities through its operations on the property at issue.

46.     Plaintiff's previously-existing mineral interest rights were on file with the Webb County Clerk's Office and were a matter of record with the Texas General Land Office and Texas Railroad Commission and have been for many years.  Therefore, Cedro Hill and its affiliates were placed on notice of such dominant rights.

47.     Plaintiff's well and pipeline facilities were active and productive at the time of the underlying events and continue to be active, though now impaired and productive to a lesser extent.  Cedro Hill and its affiliates were aware that the pipeline was and is

active and productive.  The well and pipeline facility at issue was and is clearly identified and marked.  Cedro Hill and its affiliates knew and/or should have known that the gas and/or oil produced by Plaintiff's well and transported through the pipeline facility was being placed into the stream of commerce.  Oil and/or gas produced by Plaintiff's well and transported through its pipeline has been placed into the stream of commerce for nearly four decades.  Thus, Cedro Hill and its affiliates knew or should have known that Plaintiff was a party to existing contracts for the sale of oil and/or gas produced from its wells.

48.    By willfully, intentionally and maliciously beginning and continuing construction and operations to the detriment of Plaintiff, even after being informed of Plaintiff's dominant property interests, though they should have known in any event, Cedro Hill and its affiliates willfully, intentionally and maliciously interfered with one or more contracts to which Plaintiff was a party.

49.    The willful, intentional and malicious interference with Plaintiff's existing contracts by Cedro Hill and its affiliates proximately caused actual damages to Plaintiff as stated above.  Such willful, intentional and malicious conduct entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code Section 41.003(a).

v.    Intentional Interference with and Invasion of Property Rights

50.    Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

51.    As described above, Plaintiff has continually possessed the mineral rights from the subject property and has actively produced oil and/or gas from the property for nearly four decades.  Its rights to the property are a matter of public record and, as

such, Cedro Hill and its affiliates cannot deny either actual or constructive knowledge of Plaintiff's dominant rights to the property.

52.     Despite that knowledge, Cedro Hill and its affiliates have intentionally and maliciously interfered with Plaintiff's dominant right to the use and enjoyment of the subject property by restricting Plaintiff's access to its own facilities and damaging Plaintiff's property which has long-existed on the land.  Consequently, Cedro Hill and its affiliates have prevented Plaintiff from its lawful and dominant use and enjoyment of the subject property, instead purporting to assert a subservient surface right which could only have been granted subject to Plaintiff's previously-existing use and operations.

53.     Cedro Hill's and its affiliates' intentional, reckless and malicious conduct has caused and will continue to cause Plaintiff to suffer damages.  Cedro Hill and its affiliates are aware of such past and present damages and nonetheless continue on their malicious course of conduct.

vi.     <u>Negligence</u>

54.     Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

55.     As a wind farm owner, developer and/or operator, Cedro Hill and its affiliates had a duty to conduct due diligence and perform a thorough search of record title to the land on which they proposed (and ultimately built) a wind farm prior to the time the construction began and Plaintiff's property was damaged and its superior lawful rights trampled upon.  Defendant and its affiliates had a legal duty to ensure they had the right to conduct their proposed/intended construction and operations.

56.     The failure of Cedro Hill and its affiliates to conduct due diligence and perform a thorough title search of the subject property prior to commencing construction and operations was a breach of their legal duty and was not what a reasonable and prudent wind farm owner, developer and/or operator would have done in the same or similar circumstances.

57.     As described above, Plaintiff sustained damages as a result of Cedro Hill's and its affiliates' breach of their legal duty.  In other words, the breach of Cedro Hill's and its affiliates' duty to perform due diligence and title search proximately caused Plaintiff's damages as described above.

vii.    <u>Gross Negligence</u>

58.     Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

59.     Moreover, the acts and omissions, as set forth above, were committed by Cedro Hill and its affiliates intentionally, recklessly and maliciously.  Such intentional, reckless and malicious conduct constitutes gross negligence.  More specifically, the conduct of Cedro Hill and its affiliates, when viewed objectively from the standpoint of Cedro Hill and its affiliates at the time of the occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm or damage to Plaintiff and of which Cedro Hill and its affiliates had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiff.  As such, the conduct of Cedro Hill and its affiliates justifies and warrants an award of exemplary damages against Cedro Hill.

viii.   <u>Malicious Civil Prosecution</u>

60.     Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

61.     Plaintiff was a party to a civil proceeding styled *Cedro Hill Wind LLC v. Cordele Development Corporation and Cinco Equis Oil Company*, Civil Action No. SA10CA0207-XR, filed in the U.S. District Court for the Western District of Texas.

62.     That proceeding was instituted against Plaintiff by and at the insistence of Cedro Hill.

63.     Cedro Hill acted maliciously and recklessly in instituting the proceeding, having had no legitimate basis upon which to file suit.  In fact, Cedro Hill instituted that proceeding days before it was to have a conference with Plaintiff in what Plaintiff believed was a good faith gesture to resolve its dispute with Defendants for damages cause to Plaintiff by Defendants.

64.     Cedro Hill did not have probable cause or reasonable/colorable legal basis to institute the proceeding.  Plaintiff's superior rights to the property at issue had been a matter of public record for decades, and Defendants had both actual and constructive notice of those superior rights.

65.     That proceeding instituted by Cedro Hill was terminated by a dismissal of the lawsuit on April 7, 2010 which, on the facts of this case, was a termination in Plaintiff's favor.

66.     Defendant's institution of the proceeding resulted in physical interference with Plaintiff's property and caused actual damages to Plaintiff's reputation and property.  Plaintiff also incurred defense damages, which include the reasonable and

necessary expenses for defense of the underlying suit, all of which Plaintiff now seeks recovery.

67.     Plaintiff's injury resulted from Defendant's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code Section 41.003(a).

68.     In asserting these claims, Plaintiff has and will continue to incur reasonable expenses and attorneys' fees.  As the claims are part and parcel to one another, including Defendant's breach of an express contract, Cedro Hill should be required to reimburse Plaintiff for all reasonable attorneys' fees incurred in asserting such claims.

**2.     Causes of Action against Edison Mission Energy**

i.     <u>Declaratory Judgment - 28 U.S.C. §§ 2201 and 2202</u>

69.     Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

70.     There is an actual controversy between Plaintiff and Edison Mission Energy and its affiliates.  In accordance with 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57, Plaintiff requests that the Court enter judgment declaring that: (a) Plaintiff possesses dominant rights to Plaintiff's previously-existing mineral interest property at issue than any such property rights of Edison Mission Energy and its affiliates; (b) Edison Mission Energy and its affiliates have trespassed onto and damaged the dominant estate interest possessed by Plaintiff; (c) Edison Mission Energy's and its affiliates' operations on the subject land, if left unabated, will continue to cause damage to Plaintiff's well, lease and pipeline facilities; (d) Edison Mission Energy and its affiliates may not cause any further damages to Plaintiff's property, including its well, lease and

pipeline facilities; and (e) the agreement to make Plaintiff whole entered into between Plaintiff and the manager of the Cedro Hill project is both valid and enforceable.

71.    In accordance with 28 U.S.C. § 2202 and Fed. R. Civ. P. 57, Plaintiff further requests that the Court enter judgment granting them any such further necessary or proper relief as may be warranted.

ii.    Declaratory Judgment – Tex. Civ. Prac. & Rem. Code §§ 37.001 *et seq.*

72.    Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

73.    There is an actual controversy between Plaintiff and Edison Mission Energy, Cedro Hill and their affiliates.   In accordance with Texas Civil Practice & Remedies Code §§ 37.001 *et seq*, Plaintiff requests that the Court enter judgment declaring that: (a) Plaintiff possesses dominant rights to Plaintiff's previously-existing mineral interest property at issue than any such property rights of Edison Mission Energy, Cedro Hill and/or their affiliates; (b) Edison Mission Energy, Cedro Hill and their affiliates have trespassed onto and damaged the dominant estate interest possessed by Plaintiff; (c) that Edison Mission Energy, Cedro Hill and their affiliates' operations on the subject land, if left unabated, will continue to cause damage to Plaintiff's lease, well and pipeline facilities; (d) Edison Mission Energy, Cedro Hill and their affiliates may not cause any further damages to Plaintiff's property, including its well, lease and pipeline facilities; and (e) the agreement to make Plaintiff whole entered into between Plaintiff and the manager of Edison Mission Energy's Cedro Hill project is both valid and enforceable.

74.     In accordance with Texas Civil Practice & Remedies Code §§ 37.001 *et seq*, Plaintiff further requests that the Court enter judgment granting it reasonable attorneys' fees and costs, as provided by statute, as well as any such further necessary or proper relief as may be warranted.

iii.     <u>Breach of Contract</u>

75.     Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

76.     Plaintiff entered into a valid, enforceable contract with Edison Mission Energy, Cedro Hill and their affiliates.  The manager who entered into the contract on behalf of Edison Mission Energy, Cedro Hill and their affiliates had actual and/or apparent authority to bind Defendants and their affiliates.  The contract provided that Defendants would make Plaintiff whole for any damages and/or expenses caused by Defendants' operations, and the Plaintiff would enter into a mutually-agreed and negotiated crossing agreement.

77.     Plaintiff is a party to, and intended beneficiary of, the contract.  Therefore, it is a proper party to sue for breach of contract.

78.     Plaintiff attempted to perform its obligations under the contract.  However, Defendants' continual tortious, malicious and bad-faith conduct as stated above has rendered Plaintiff unable to perform its obligations under the contract.  Therefore, Plaintiff is excused from performing its obligations under the contract.

79.     Edison Mission Energy, Cedro Hill and their affiliates have breached the contract.  They have refused to make Plaintiff whole for the damages caused it, instead attempting to coerce Plaintiff into concession by nothing short of bad-faith bullying

tactics, including the filing of a lawsuit.  Plaintiff has attempted in good faith to resolve this matter without the need for litigation, but Defendants refuse to comply with their agreement to make Plaintiff whole.

80.     The breach of contract by Edison Mission Energy, Cedro Hill and their affiliates has caused past and present damages, including lost profits, costs of repairs to damaged property, lost opportunities, increased expenses associated with operations and other unliquidated damages, and it is anticipated that the malicious and reckless conduct and operations of Edison Mission Energy, Cedro Hill and their affiliates, if left unabated, will cause future damages to Plaintiff, as well.

81.     Plaintiff is entitled to recover reasonable attorney fees under the Texas Civil Practice and Remedies Code Chapter 38 because this is a suit for breach of an oral contract that was performable within one year.  Plaintiff presented its claim for damages to Defendants through counsel prior to the initiation of this lawsuit.

iv.     <u>Tortious Interference with Existing Contract</u>

82.     Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

83.     At the time of the underlying events of this lawsuit, and to the present, Plaintiff was a party to existing contracts to provide gas and/or oil supplies to entities through its operations on the property at issue.

84.     Plaintiff's previously-existing mineral interest rights were on file with the Webb County Clerk's Office and were a matter of record with the Texas General Land Office and Texas Railroad Commission and have been for many years.  Therefore,

Edison Mission Energy, Cedro Hill and their affiliates were placed on notice of such dominant rights.

85.    Plaintiff's well and pipeline facilities were active and productive at the time of the underlying events and continue to be active, though now impaired and productive to a lesser extent.  Edison, Cedro Hill and their affiliates were aware that the pipeline was and is active and productive.  The well and pipeline facility at issue was and is clearly identified and marked.  Edison, Cedro Hill and their affiliates knew and/or should have known that the gas and/or oil produced by Plaintiff's well and transported through the pipeline facility was being placed into the stream of commerce.  Oil and/or gas produced by Plaintiff's well and transported through its pipeline has been placed into the stream of commerce for nearly four decades.  Thus, Edison Mission Energy, Cedro Hill and their affiliates knew or should have known that Plaintiff were a party to existing contracts for the sale of oil and/or gas produced from its wells.

86.    By willfully, intentionally and maliciously beginning and continuing construction and operations to the detriment of Plaintiff, even after being informed of Plaintiff's dominant property interests, though they should have known in any event, Edison, Cedro Hill and their affiliates willfully, intentionally and maliciously interfered with one or more contracts to which Plaintiff was a party.

87.    The willful, intentional and malicious interference with Plaintiff's existing contracts by Edison, Cedro Hill and their affiliates proximately caused actual damages to Plaintiff as stated above.  Such willful, intentional and malicious conduct entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code Section 41.003(a).

v.    Intentional Interference with and Invasion of Property Rights

88.    Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

89.    As described above, Plaintiff has continually possessed the mineral rights from the subject property and has actively produced oil and/or gas from the property for nearly four decades.  Its rights to the property are a matter of public record and, as such, Edison, Cedro Hill and their affiliates cannot deny either actual or constructive knowledge of Plaintiff's dominant rights to the property.

90.    Despite that knowledge, Edison, Cedro Hill and their affiliates have intentionally and maliciously interfered with Plaintiff's dominant right to the use and enjoyment of the subject property by restricting Plaintiff's access to its own facilities and damaging Plaintiff's property which has long-existed on the land.  Consequently, Edison, Cedro Hill and their affiliates have prevented Plaintiff from its lawful and dominant use and enjoyment of the subject property, instead purporting to assert a subservient surface right which could only have been granted subject to Plaintiff's previously-existing use and operations.

91.    Edison, Cedro Hill and their affiliates' intentional, reckless and malicious conduct has caused and will continue to cause Plaintiff to suffer damages.  Edison, Cedro Hill and their affiliates are aware of such past and present damages and nonetheless continue on their malicious course of conduct.

vi.    Negligence

92.    Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

93.     As a wind farm owner, developer and/or operator, Edison, Cedro Hill and their affiliates had a duty to conduct due diligence and perform a thorough search of record title to the land on which they proposed (and ultimately built) a wind farm prior to the time the construction began and Plaintiff's property was damaged and it's lawful superior rights trampled upon.  Defendant and its affiliates had a legal duty to ensure they had the right to conduct their proposed/intended construction and operations.

94.     The failure of Edison, Cedro Hill and their affiliates to conduct due diligence and perform a thorough title search of the subject property prior to commencing construction and operations was a breach of their legal duty and was not what a reasonable and prudent wind farm owner, developer and/or operator would have done in the same or similar circumstances.

95.     As described above, Plaintiff sustained damages as a result of Edison, Cedro Hill and their affiliates' breach of their legal duty.  In other words, the breach of Edison, Cedro Hill and their affiliates' duty to perform due diligence and title search proximately caused Plaintiff's damages as described above.

vii.    <u>Gross Negligence</u>

96.     Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

97.     Moreover, the acts and omissions, as set forth above, were committed by Edison, Cedro Hill and their affiliates intentionally, recklessly and maliciously.  Such intentional, reckless and malicious conduct constitutes gross negligence.  More specifically, the conduct of Edison, Cedro Hill and their affiliates, when viewed objectively from the standpoint of Edison, Cedro Hill and their affiliates at the time of the

occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm or damage to Plaintiff and of which Edison, Cedro Hill and their affiliates had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiff.  As such, the conduct of Edison, Cedro Hill and their affiliates justifies and warrants an award of exemplary damages against each of them.

98.    In asserting these claims, Plaintiff has and will continue to incur reasonable expenses and attorneys' fees.  As the claims are part and parcel to one another, including Defendant's breach of an express contract, Edison, Cedro Hill and their affiliates should be required to reimburse Plaintiff for all reasonable attorneys' fees incurred in asserting such claims.

**3.    Causes of Action against Wanzek Construction, Inc.**

i.    Negligence

99.    Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

100.   As a constructor of wind energy farm structures, Wanzek had a duty to conduct its construction operations with due regard for and reasonable care of personal and real property (as well as associated rights inherent therewith) belonging to third parties not involved in or associated with, its construction efforts.  Stated conversely, Wanzek had a duty not to damage or harm the rights or property of third parties not involved in its construction project.  Further, Wanzek had a legal duty to ensure it had the right to conduct its intended construction and operations on the land on which the construction and operations were proposed.

101.   Wanzek had both constructive and actual notice of Plaintiff's property interests in the subject property prior to the time it began its destruction of Plaintiff's property simultaneous with its construction of the wind energy farm project.

102.   The failure of Wankez to conduct its construction operations with due regard for and reasonable care of personal and real property (as well as associated rights inherent therewith) belonging to Plaintiff, who was not involved in or associated with, its construction efforts, was a breach of its legal duty and was not what a reasonable and prudent constructor of wind energy farm structures would have done in the same or similar circumstances.  Further, the failure of Wanzek to ensure it had the right to conduct its intended construction and operations on the land on which the construction and operations were proposed, was a breach of its legal duty and was not what a reasonable and prudent constructor of wind energy farm structures would have done in the same or similar circumstances.

103.   Plaintiff sustained damages as a proximate result of Wanzek's breach of their legal duty.  In other words, the breach of Wanzek's duty to conduct its construction operations with due regard for and reasonable care of personal and real property (as well as associated rights inherent therewith) belonging to Plaintiff proximately caused Plaintiff's damages as described above.

ii.   <u>Gross Negligence</u>

104.   Plaintiff adopts and re-alleges each preceding paragraph as set forth herein.

105.   Moreover, the acts and omissions, as set forth above, were committed by Wanzek intentionally, recklessly and maliciously.   Such intentional, reckless and

malicious conduct constitutes gross negligence.   More specifically, the conduct of Wanzek, when viewed objectively from the standpoint of Wanzek at the time of the occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm or damage to Plaintiff and of which Wanzek had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiff.   As such, the conduct of Wanzek justifies and warrants an award of exemplary damages against Wanzek.

**V.**

**DAMAGES**

106.    As a direct and proximate result of Defendants' conduct, Plaintiff has or will suffer damages, including the following:

1) General damages, including property damage;

2) Lost profits;

3) Costs and expenses associated with directional drilling; and

4) defense costs of the underlying lawsuit as to Cedro Hill Wind LLC;

**VI.**

**PLAINTIFF'S DEMAND FOR JURY TRIAL**

107.    Plaintiff, CORDELE DEVELOPMENT CORPORATION, hereby demands a trial by jury on all issues.

**VII.**

**PRAYER**

WHEREFORE,       PREMISES       CONSIDERED,       Plaintiff,       CORDELE DEVELOPMENT CORPORATION, requests that the Court issue citation for Defendants

to appear and answer, and that Plaintiff be awarded judgment against Defendants for all things requested, including:

1)    judgment by the Court that:

(a) Plaintiff possesses dominant rights to Plaintiff's previously-existing mineral interest property at issue than any such purported property rights of Defendants and their affiliates;

(b) Defendants and their affiliates have trespassed onto and damaged the dominant estate interest possessed by Plaintiff;

(c) Defendants' and their affiliates' operations on the subject land, if left unabated, will continue to cause damage to Plaintiff's lease, well, pipeline and gathering facilities;

(d) Defendants and their affiliates may not cause any further damages to Plaintiff's property, including its lease, well, pipeline and gathering facilities; and

(e) the contract entered into between Plaintiff and Defendants, Edison Mission Energy, Cedro Hill and their affiliates, is both valid and enforceable.

2)    actual damages;

3)    punitive damages;

4)    costs of suit;

5)    defense costs of the underlying lawsuit as to Cedro Hill Wind LLC;

6)    reasonable attorneys' fees as to Defendants, Edison Mission Energy and Cedro Hill Wind LLC;

7)    pre-judgment and post-judgment interest as provided by law; and

8)     any other further relief, both at law or in equity, to which this Plaintiff may

show itself to be justly entitled.

Respectfully Submitted,


/s/ Phil Watkins
PHIL WATKINS
State Bar No. 20927400

**PHIL WATKINS, P.C.**
926 Chulie Drive
San Antonio, Texas  78216
Telephone:  (210) 225-6666
Telecopier:  (210) 225-2300
phil@philwatkins.com

and


/s/ John A. Fuentes
JOHN A. FUENTES
State Bar No. 24012662

**LAW OFFICE OF JOHN A. FUENTES, PLLC**
926 Chulie Drive
San Antonio, Texas  78216
Telephone:  (210) 225-6666
Telecopier:  (210) 225-2300
jfuentes@fuenteslawfirm.com

ATTORNEYS FOR PLAINTIFF,
CORDELE DEVELOPMENT CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to the following individuals pursuant to the Federal Rules of Civil Procedure this 28th day of January, 2011:


Mr. Penn Huston
Mr. William Burns
KING & SPALDING LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002

Mr. Anthony Trevino, Jr.
Mr. Kenneth A. Valls
TREVINO, VALLS & HAYNES, L.L.P.
6906 Springfield Avenue, Suite 200
Laredo, Texas 78041


<u>/s/ John A. Fuentes</u>
JOHN A. FUENTES